427 So.2d 464 (1983)
Joe K. SWEENEY and Charles L. McDaniel
v.
POPEYES FAMOUS FRIED CHICKEN, INC.
No. 5-352.
Court of Appeal of Louisiana, Fifth Circuit.
January 10, 1983.
Rehearing Denied March 17, 1983.
*465 Peter J. Butler, New Orleans, for defendant-appellant.
T. Allan Usry, Metairie, for plaintiff-appellee.
Before BOUTALL, GAUDIN and DUFRESNE, JJ.
DUFRESNE, Judge.
Popeyes Famous Fried Chicken, Inc., defendant-appellee, brings this appeal from a judgment rescinding an option agreement with Joe Sweeney and Charles McDaniel, plaintiffs-appellees. The trial court found that the object of the option was too indefinite to create a valid contract, and ordered that plaintiffs' $65,000 payment for the defective option be returned by defendant.
Because we find that the object of the option appears indefinite on the face of the contract and that appellant failed to prove that this indefiniteness did not relate to a material cause of the contract, we affirm.
The pertinent facts can be briefly stated. Plaintiffs entered into a Franchise Option Agreement with Popeyes whereby they were granted the exclusive right to open five Popeyes' fried chicken outlets in Phoenix, Arizona under the terms of licenses or Franchise Agreements to be issued by Popeyes when the physical facilities were built by plaintiffs. When the term of the option expired, with no outlets having been built because of the unavailability of financing, plaintiffs sought refund of the option price on the grounds that the object of the option was indefinite, and therefore that no valid contract had been formed.
The substance of plaintiffs' claim lies in the following language of the option agreement:
A. Franchisor hereby grants to Optionee the option to establish and operate 5 Popeyes Famous Fried Chicken franchises within the geographical area described on Exhibit "A" attached hereto on the terms and conditions contained herein and for each such franchise option granted, Franchisor shall issue a license to Optionee to use in connection therewith Franchisor's proprietary marks and the Popeyes Famous Fried Chicken System at one location to be approved by Franchisor as set out herein and mutually agreed upon in writing. Such License to be on the terms and conditions contained in the Franchisor's form of Franchise Agreement current at the date of execution, except that provisions governing the initial franchise fee, royalties, advertising fees and term of the franchise shall be as set forth in Franchisor's present form of Franchise Agreement appended hereto as Exhibit "C" and incorporated herein by reference.
Plaintiffs contended at trial that because the licenses were "to be on the terms and conditions contained in [Popeyes] form of Franchise Agreement current at the date of execution", Popeyes could, at its discretion, alter the terms of the licenses before issuance. Popeyes did not contest that it reserved the right to alter the Franchise Agreement before issuance, except in regard to franchise and advertising fees, royalties, and the term of the franchise, all of which were fixed at the time the option was signed.
In his reasons for judgment in favor of plaintiffs, the trial judge apparently concluded that Popeyes could alter the "royalties, etc.", and therefore that the option was invalid for lack of a definite object because it bound plaintiffs to the "whims and caprices" of Popeyes.
Although we find that the trial court erred in concluding that the royalties were subject to change, we nonetheless affirm on the grounds that there is nothing in the record which would permit us to conclude that the terms subject to change were not as essential to the option as the franchise and advertising fees, royalties, and the term of the franchise.
Appellant alleges here that the judgment was also erroneous as a matter of law for two reasons. They first contend that the object of the option was the exclusive right to open outlets in Phoenix, and not the Franchise Agreements, or licenses themselves. Second, they claim that even were *466 the licenses the object of the option, the terms subject to change were merely accidental stipulations which did not relate to the essence of the option, and therefore did not vitiate the contract for lack of a certain essential object. Both allegations are without merit.
We note at the outset that a copy of the Franchise Agreement referred to in the option contract as Exhibit "C" was not appended to the contract, was not introduced into evidence, and is therefore not a part of the record before this court.
The burden of establishing the validity of a contract rests upon the party seeking to establish it. North American Contracting Corp. v. Gibson, 327 So.2d 444 (La.App. 3rd Cir.1974); Hebert v. Briley, 295 So.2d 607 (La.App. 3rd Cir.1974). Under LSA-C.C. art. 1779, one of the four requisites to a valid contract is a certain object which forms the matter of the agreement. Similarly, art. 1886 provides that an obligation must have for its object something determinate. On the facts before us, we must therefore determine whether appellant has carried its burden of establishing that the object of the option contract was certain and determinate.
Popeyes first contention is that the only object of the option was the right to establish outlets, and not the licenses under which the outlets were to be operated. We need only refer to the language of the contract quoted above to determine otherwise. Taking this language in its entirety, we can only conclude that plaintiffs were acquiring the right to operate outlets under the terms and conditions contained in the license agreements which defendant obligated itself to provide in return for the option price. It is clear that plaintiffs were bargaining for the right to market fried chicken in an exclusive area under license from Popeyes. It is equally clear that they would have been able to demand these licenses from Popeyes on completion of the stores under the option agreement. Moreover, as such licenses were necessary to operate the outlets under Popeyes' name, they must necessarily have been a part of the object of the option contract, and we so find.
We further find that plaintiffs made a prima facie case that on its face the option contract permitted Popeyes to change the terms of the Franchise Agreements at any time between the signing of the option and the actual issuance of the licenses. Conceivably, then, Popeyes could have changed the Franchise Agreements in ways that would have been so burdensome to plaintiffs' operation of the outlets as to make them economically unfeasable as business ventures. We conclude, therefore, that this discretion on defendant's part to change the terms of the Franchise Agreements renders the object of the option too uncertain on the face of the contract to be the basis of a valid option agreement.
Appellant argues in its second assignment of error, however, that even were the licenses the object of the option, the details of the licensing agreements subject to change were not essential to the contract under LSA-C.C. art. 1764, and therefore Popeyes retention of the right to change such details did not render the essential object of the contract uncertain. In support of this contention, Popeyes emphasizes that the franchise and advertising fees, royalties, and term of the franchise were fixed at the time the option was signed, and that these provisions were the essence of the licenses. They further aver that the terms subject to change at their discretion dealt only with the daily operation of the outlets and with other matters merely accidental to the essence of the licenses.
While there was testimony by William Copeland, executive vice-president of Popeyes to the above effect, appellant failed to introduce into evidence the Franchise Agreement referred to and incorporated into the option contract. As parol evidence is inadmissible to prove the terms of an existing written contract, LSA-C.C. art. 2276, there was no evidence before the trial court, or before this court, on which to judge whether or not the terms at issue here were accidental or essential to the option. Appellant thus failed to carry its *467 burden of establishing that the contract was valid as to an object certain. Because appellant failed to rebut plaintiffs' prima facie case that the option was void, the trial court correctly ruled in plaintiffs' favor.
We finally emphasize that our holding today is not that retention of control by franchisors over the operational details of outlets is necessarily fatal to all option contracts for franchises. What we do hold is that because appellant here failed to establish that the discretion retained by it to change the licensing agreement at will was limited to such details, or that such details were accidental to the contract, the option contract at issue here is defective for want of a certain object.
For the foregoing reasons, the judgment appealed from is affirmed.
AFFIRMED.