GLADNEY, Judge.
In this appeal a judgment debtor of Sunshine Dairies, Incorporated seeks to hold a stockholder, I. E. Tyner, liable for a debt of the corporation for an amount allegedly due on his stock subscription. The defense asserted is twofold: the stock was fully paid for, and plaintiff is without a right of action. From an adverse decision, defendant Tyner has appealed.
The charter of Sunshine Dairies, Incorporated, was executed on January 28, 1955, and filed of record in Bossier Parish. The named officers and incorporators and the number of shares allotted are: Elmer H. Odum, President, fifty-five shares; C. W. Holt, Vice-President and Treasurer, twenty shares; and I. E. Tyner, Secretary, five shares. The capital stock is stated to be eighty shares of $100 par value each. Attached to the charter is the sworn deposition of Odum and Holt, that: the eighty shares of stock were issued; of these, eight shares were sold for cash for $800, and seventy-two shares were represented by equipment in the amount of $7,200; and “ * * * the Incorporators consider the property and equipment in the corporation to be well worth the sum of Eight Thousand and 20/100 ($8,000.20) Dollars.” (Emphasis supplied).
It is disclosed by the record that following its organization a dairy business managed by Odum was operated in the corporate name and was carried on for a number of months. During July and August 1955, plaintiff sold the corporation milk, for which the sum of $526.02 remained unpaid and on October 25, 1955, was converted into a judgment. Execution was attempted under a writ of fieri facias dated June 18, 1958, but the writ was returned “not satisfied.” This suit followed.
The uncontroverted testimony of Tyner shows Odum was indebted to him for $500 and Odum requested Tyner to become a shareholder in the corporation for that amount of the capital stock, representing that the stock would be fully paid for in supplies, equipment and cows to be turned over to the corporation by Odum. Tyner testified he gave Odum credit for $500 on the debt and he accepted the assurance of Odum and Holt that the stock was to be paid for in the manner aforesaid.
Holt testified a valuation of $7,200 was placed on supplies, equipment and cows and that the corporation used this property in its business, but “no property was turned over to the corporation.” The meaning of Holt’s expression is not clear but seems to indicate no indicia of title in the name of the corporation was furnished by Odum to Holt. He states further that the stock of Odum and Tyner was never paid for. This seems to be his conclusion based on the assumption it was essential there should be a transfer of title by some formal act.
The transaction between Odum and the corporation involving only personalty meets the requirement for a sale, LSA-C.C. Art. 2439, or an exchange, LSA-C.C. Art. 2660, and by either transfer title vested in the corporation upon delivery. What became of the property afterward is immaterial to this appeal forasmuch as Tyner has not been charged with participation in any fraud or unlawful act through which the corporation was dispossessed of its property.
Pertinent to appellant’s defense are the following provisions of the Business Corporation Law, LSA-R.S. 12:1-72:
“§ 16. Issue of certificates of stock
“A. A certificate of stock shall not be issued until the shares represented thereby have been fully paid for.
* * * * * *
“C. Shares allotted as stock dividends, and shares for which the agreed consideration has been paid, delivered, or rendered to the corporation shall be fully paid shares, and, *681 unless otherwise provided in the articles, shall be nonassessable.
“§ 17. Valuation of consideration for shares.
“For the purpose of determining whether shares have been fully paid for in order to fix the extent of the outstanding obligation of a shareholder to the corporation with respect to such shares, the following valuations shall be conclusive:
“(1) the valuation placed by the incorporators, the shareholders, or the directors, as the case may be, upon the consideration other than cash with which the subscriptions for shares are made payable; * * *
⅝ ⅜ ‡ ⅜ ⅜ ‡
“§ 19. Liability of incorporators, subscribers, shareholders, directors and officers
“A. A subscriber to ■ or holder of shares of a corporation formed after January 1, 1929, shall be under no liability to the corporation' with respect to such shares, other than the obligation of complying with the terms of the subscription therefor, and said obligation shall continue whether or not his rights or shares have been assigned or transferred but one who becomes a shareholder in good faith and without knowledge or notice that the shares he acquired had not been fully paid for, shall not be liable to the corporation with respect to payment for such shares.
“B. A shareholder of a corporation formed after January 1, 1929 shall not be personally liable for any debt or liability of the corporation.
“C. Nothing in this Chapter shall be construed as in derogation of any rights which any person may by law have against an incorporator, subscriber, shareholder, director, officer, or the corporation, because of any fraud practiced upon him by any of such persons or the corporation, or in derogation of any right which the corporation may have because of any fraud practiced upon it by any of these persons.”
The above provisions justify the inference that a shareholder who honestly fulfills the terms of his subscription is accorded full protection against further liability.
Upon further examination of the statute we find no explicit authority therein which entitles a debtor of a corporation to initiate a direct action against a stockholder for his unpaid stock subscription and the right to institute such an action appears to be vested in the corporation. This is the ground upon which appellant contends plaintiff does not have a right of direct action against him.
Several cases in our jurisprudence, beginning with Derbes v. Till, 1930, 13 La. App. 495, 128 So. 196, have held that where the corporation has been more or less completely liquidated, lacking a receiver or liquidator, and where the property or assets of the corporation have been distributed, a judgment creditor may proceed directly against a stockholder for amounts improperly withdrawn. The decision is predicated on LSA-Civil Code Articles 21 and 3183, which respectively provide that in the absence of positive law, the court must proceed equitably and a debtor’s property is the common pledge of his creditors. The reasoning of Derbes v. Till was followed in Fudickar v. Inabnet, 1933, 176 La. 777, 146 So. 745; Stock v. E. A. Fabacher, Inc., La.App.1938, 185 So. 48, and Chelsea Sales Corporation v. A. Jacobs Co., Inc., La.App. 1940, 193 So. 402. These decisions turned upon facts which indicated that as a result of the dissolution of the corporation, the only remedy .remaining to the creditor against a shareholder for unjust or illegal enrichment was by a direct action. No case has *682 been pointed out to us, nor have we been able to find any, which would indicate that where the corporation can be reached for service of process and possible action taken to recover corporate assets which were unlawfully removed or disposed of, a direct action against a shareholder may be brought by the corporation creditor. We are of the opinion the exception of no right of action should be sustained.
We hold the stock subscribed to by Tyner must be considered as being fully paid for and plaintiff’s action must, therefore, fall. Accordingly, the judgment from which appealed is annulled, reversed and set aside, and it is ordered, adjudged and decreed that plaintiff’s demands against I. E. Tyner be dismissed at appellee’s cost.